SQUIRE SANDERS (US) LLP
(formerly known as Squire, Sanders & Dempsey (US) LLP)
30 Rockefeller Plaza
New York, New York 10112
(212) 872-9800
Robert A. Wolf, Esq.
(robert.wolf@squiresanders.com)

**Substitute General Counsel to the Chapter 7 Trustee**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------x
In re                                                                :
                                                                     :
**KOLLEL MATEH EFRAIM, LLC a/k/a MATEH EPHRAIM,**    :
**LLC, a/k/a KOLEL MATEH EFRAIM,**                   :
                                                                     :
                    Debtor.                          :
---------------------------------x
**ROBERT L. GELTZER, as Chapter 7**                  :
**Trustee of the Estate of Debtor KOLLEL MATEH EFRAIM,** : 10 Civ. 7123 (PAE)
**LLC, a/k/a MATEH EPHRAIM LLC, a/k/a KOLEL MATEH**  :
**EFRAIM,**                                          :
                                                                     :
                    Plaintiff,                       :
                                                                     :
         v.                                          :
                                                                     :
**KOLLEL MATEH EFRAIM, LLC a/k/a MATEH EPHRAIM,**    :
**LLC, a/k/a KOLEL MATEH EFRAIM and KOLEL MATEH**    :
**EFRAIM,**                                          :
                                                                     :
                    Defendants.                      :
                                                                     :
---------------------------------x

## JOINT PRE-TRIAL ORDER

1.  **NATURE OF THE CASE**: In the above-captioned adversary proceeding in the above-captioned bankruptcy case, plaintiff Robert L. Geltzer, as Chapter 7 Trustee (the "Trustee") of the debtor in this bankruptcy case, Kollel Mateh Efraim, LLC, a/k/a Mateh Ephraim LLC, a/k/a Kolel Mateh Efraim (the "Debtor"), hereby seeks (i) a declaratory judgment of this Court that the defendant Kolel Mateh Efraim (the "Religious Corporation") is the alter ego of the Debtor and thus liable for all of the debts of the Debtor, by reason of the Trustee's contentions, among other things of:

1

(a) the Religious Corporation's execution of certain documents relating to real estate interests claimed to be assets of the Debtor; (b) the listing of the Religious Corporation's Federal Employment Identification Number ("EIN") on certain documents relating to real estate assets claimed to be assets of the Debtor; (c) during the Chapter 11 phase of this bankruptcy case, the Debtor's establishment of a debtor-in-possession account bearing the title "Kolel Mateh Efraim - DIP," (the "DIP Account"), with the sole authorized signatory of that account being Rabbi Abraham Steinwurzel ("Rabbi Steinwurzel"), the trustee of the Religious Corporation and its head rabbi, and at the same time the purported Manager of the Debtor; (d) the funding of that DIP Account with monies transferred thereto from accounts maintained by the Religious Corporation, of which accounts Rabbi Steinwurzel was an authorized signatory, and from fees for a summer camp and for a yeshiva operated and directed by Rabbi Steinwurzel; (e) the fact that at no time relevant to this adversary proceeding has there been extant a legal entity by the name of "Kollel Mateh Efraim, LLC," one of the names of the Debtor; and (f) the fact that the entity Mateh Ephraim LLC, another one of the names by which the Debtor is known, has never had any income, and has never had a bank account in its own name.

The Religious Corporation denies the critical allegations and contends that the individuals involved never intended to have the Religious Corporation as the contract-vendee of the real estate premises defined herein as the Meadows Property and that numerous mistakes were made by several participants to the transactions including lawyers. The Religious Corporation also contends that as a matter of law, neither Jack Lefkowitz nor Rabbi Steinwurzel had any authority or power to bind or involve the Religious Corporation with respect to the actions identified by the Trustee.

2. **JURISDICTION and VENUE**:  The United States District Court for the Southern District of New York has jurisdiction over this adversary proceeding under 28 U.S.C.

2

§ 1334. By virtue of 28 U.S.C. § 157(a), and the Standing Order dated July 10, 1984 of District Court Judge Robert J. Ward of the United States District Court for the Southern District of New York, this adversary proceeding was automatically referred to the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). This adversary proceeding is a core proceeding under, among other things, 28 U.S.C. § 157(b)(2)(A), (B) and (O). By virtue of the Religious Corporation's demand for a jury trial of this adversary proceeding, and by virtue of the fact that the Religious Corporation did not consent to have the jury trial of this adversary proceeding conducted by a bankruptcy judge pursuant to 28 U.S.C. § 157(e), the reference of the adversary proceeding to the Bankruptcy Court was withdrawn pursuant to 28 U.S.C. § 157(d) and pursuant to a Stipulation between the Trustee and the Religious Corporation that was so ordered by the Honorable Robert W. Sweet of this Court on September 21, 2010.

3. **AMENDMENTS-DISMISSALS**: The Trustee previously agreed to dismiss his other claim asserted in the Complaint in this adversary proceeding, namely, his claim for a declaratory judgment that the Religious Corporation is the actual debtor in this bankruptcy case. The Religious Corporation's Answer is deemed amended to include in its Affirmative Defense "A" reference to Section 200 of the Religious Corporation Law of New York, in addition to the other statutory provisions set forth in that Affirmative Defense, without prejudice to the Trustee's right to contend that the Affirmative Defense, as amended, lacks merit.

4. **RELIEF PRAYED FOR**:
   **Plaintiff-Trustee:**
   i. A declaratory judgment that the Religious Corporation, Kolel Mateh Efraim, is the alter ego of the Debtor and thus liable for all of the debts of the Debtor.

**Defendant Religious Corporation:**

    i.    Dismissal of the Trustee's remaining claim in the Complaint for a declaratory judgment that the Religious Corporation is the alter ego of the Debtor and thus liable for all debts of the Debtor.

5.    **UNDISPUTED FACTS**:

**Background Regarding The Religious Corporation**

    i.    The Religious Corporation was incorporated as a religious corporation under the laws of the State of New York in or about August, 1986.

    ii.    The Religious Corporation's certificate of incorporation recites that: (a) the principal objects and purposes for which the Religious Corporation was formed include to "conduct and maintain a House of Worship in accordance with the traditions of the Hebrew faith and to conduct all communal affairs necessary for a viable community," and to "purchase and sell property, both real and personal; to mortgage and lease both real and personal property as may be necessary for the conduct and welfare of the corporation"; and (b) there were three trustees of the Religious Corporation.

    iii.    From the time of the Religious Corporation's formation through and including the present, Rabbi Steinwurzel has been and still is the Rabbi and spiritual leader of the Religious Corporation's Jewish congregation of worship (the "Congregation").

    iv.    Since approximately 2001, the Congregation's synagogue (the "Synagogue") has been, and remains to the present date, located at 5608 13th Avenue, Brooklyn, New York, upon real property owned by the Religious Corporation. Prior to moving to that location, the Synagogue was located on the first floor of the house in which Rabbi Steinwurzel resided and still resides at 1264 56th Street, Brooklyn, New York.

147410.4/103032.00002

    v.      At all times relevant to this adversary proceeding, Rabbi Steinwurzel was an authorized signatory of various bank accounts maintained in the name of the Religious Corporation, at the branch of Astoria Federal Savings Bank located at 5220 13th Avenue, Brooklyn, New York (the "Borough Park Branch"), in close proximity to the Synagogue.

**Mateh Ephraim LLC**

    vi.    On or about July 30, 1999, Mateh Ephraim LLC (the "LLC") was organized as a limited liability company under the laws of the State of New York.

    vii.   From the time of the LLC's formation, through and including the present, Jack Lefkowitz ("Lefkowitz") has been and still is the sole member and the Managing Member of the LLC.

**Rabbi Steinwurzel's Relationship with the Debtor**

    viii.  In his May 21, 2007 Affidavit filed with the Bankruptcy Court in this case, Rabbi Steinwurzel stated that: "During all relevant times herein, I have been the Rabbi for the debtor Kollel Mateh Efraim, LLC, a/k/a Mateh Ephraim LLC, a/k/a Kollel Mateh Efraim (the "Debtor") and work closely with the Debtor's Managing Member, Jack Lefkowitz, in performing many functions for the Debtor, including managing the Debtor, paying its account payables, and helping raise funds for the Debtor."

**The Real Estate Interests**

    ix.    On or about April 29, 2004, Helen-May Holdings, LLC ("Helen-May"), the owner of certain real property known as the Meadows Resort located at 1141 County Road 114, Fosterdale, New York (the "Meadows Property"), entered into a written contract (the "Contract") with Aron Fixler ("Fixler") to sell the Property to Fixler. Paragraph 47 of a rider to the Contract stated, "It is

5

acknowledged that the Purchaser is seeking to acquire this property for use as a Yeshiva School with facilities for a dormitory."

x.  On or about June 23, 2004, two parcels of real estate adjacent to the Meadows Property (the "Adjacent Parcels") were conveyed by deeds to an entity named thereon as "Kollel Mateh Efraim LLC." At the time, and continuing through the present, there was not, and still is not, in existence a legally formed limited liability company or other entity with that name.

xii. On each of the New York State real property transfer tax forms executed in connection with the aforesaid conveyances of the Adjacent Parcels, the transferee listed thereon was the non-existent entity, "Kollel Mateh Efraim LLC."

**The Bankruptcy Petitions**

xiii. On October 4, 2004, a Chapter 11 bankruptcy petition was filed with the Bankruptcy Court (the "First Petition"), executed by Lefkowitz, listing the debtor as "Kollel Mateh Efraim, LLC," the non-existent entity. In his Local Rule 1007 Affidavit which accompanied the First Petition, Lefkowitz stated that he was the managing member of that entity, and that the entity was a New York limited liability company. At the time that the First Petition and Lefkowitz's Affidavit was filed, there was no limited liability company by that name registered with the Department of State of New York State. Moreover, no EIN was inserted on the first page of the First Petition for that named debtor.

xiv. In the First Petition, ownership of the Adjacent Parcels and the interest of contract vendee under the Contract for the Meadows Property were listed as assets of the named debtor entity.

xv. On November 24, 2004, a Chapter 11 bankruptcy petition was filed with the Bankruptcy Court (the 'Second Petition"), executed by Lefkowitz, listing the debtor as the LLC, i.e., Mateh Ephraim LLC, under Case No. 04-17525 (the

6

"Second Bankruptcy Case"). The Second Petition listed as the assets of the debtor entity named therein the identical assets listed in the First Petition, including the ownership of the Adjacent Parcels and the interest of contract vendee under the Contract for the Meadows Property.

xvi. The EIN of the LLC named as the debtor in the Second Petition was listed on the first page thereof as 11-2831693. That EIN was at the time and remains to date the EIN of the Religious Corporation.

xvii. On or about November 16, 2006, the United States Trustee moved to dismiss the Second Bankruptcy Case on the ground, among others, that the instant bankruptcy case, that had been commenced upon the filing of the First Petition, constituted a prior pending bankruptcy case involving the same debtor entity.

xviii. By an Order dated November 27, 2006, the Bankruptcy Court dismissed the Second Bankruptcy Case and ordered that the caption of the instant bankruptcy case be amended to read that the Debtor was "Kollel Mateh Efraim, LLC, a/k/a Mateh Ephraim LLC, a/k/a Kolel Mateh Efraim."

**The DIP Account**

xix. Although the instant bankruptcy case was filed as a Chapter 11 case on October 4, 2004, no debtor-in-possession bank account pertaining to the case was established until on or about April 5, 2006.

xx. On or about April 5, 2006, a debtor in possession account was opened up by Rabbi Steinwurzel at the Borough Park Branch of Astoria Federal with the following name of the account holder: "Kolel Mateh Efraim D.I.P." (the "DIP Account").

xxi. Throughout the time that the DIP Account was maintained, Rabbi Steinwurzel was the sole authorized signatory for that account.

xxii. Astoria Federal's records for the DIP Account indicate that the EIN of the holder of that account was 11-2831693, the EIN of the Religious Corporation.

xxiii. Checks drawn on the DIP Account and signed by Rabbi Steinwurzel were used to make adequate protection payments to Helen-May which this Court had ordered the Debtor to make for the occupancy of the Meadows Property pursuant to the Occupancy Agreement.

xxiv. Checks drawn on the DIP Account and signed by Rabbi Steinwurzel were also used to make payments to vendors and suppliers of the summer camp for teenage boys which Rabbi Steinwurzel operated and directed at the Meadows Property during the summers of, among other years, 2006 and 2007, and to those who did construction and/or repair work at the Meadows Property during the occupancy thereof pursuant to the Occupancy Agreement.

xxv. The DIP Account was funded from (a) transfers of monies made to the DIP Account from bank accounts in the name of the Religious Corporation maintained at the Borough Park Branch of Astoria Federal; (b) fees delivered to Rabbi Steinwurzel by parents of the teenage boys who attended the aforesaid camp operated and directed by Rabbi Steinwurzel at the Meadows Property; and (c) from contributions deposited into bank accounts maintained in the name of the Religious Corporation.

**The Conversion of the Bankruptcy Case**

xxvi. By an Order of the Bankruptcy Court dated October 25, 2007, this bankruptcy case was converted from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code.

xxvii. On or about October 29, 2007, the Trustee was appointed interim trustee of the Debtor, thereafter became permanent Trustee pursuant to Section 702(d)

8

of the Bankruptcy Code and by operation of law, and in such capacity, has continued to serve as Trustee through the present date.

6. **PLAINTIFF'S CONTENTIONS OF FACT**:

i. From the time of the Religious Corporation's formation through and including the present, Rabbi Steinwurzel has been and still is trustee of the Religious Corporation. At all times relevant to this adversary proceeding, no one other than Rabbi Steinwurzel served as a trustee and/or rabbi and/or officer of the Religious Corporation.

ii. Commencing in or about 1999, and continuing until on or about October 25, 2007, when this bankruptcy case was converted from one under Chapter 11 to one under Chapter 7 of the Bankruptcy Code, Rabbi Steinwurzel purported to be and held himself out to be the Manager of the LLC, including, without limitation, on various Monthly Operating Statements filed by the LLC with the Bankruptcy Court, which bear Rabbi Steinwurzel's signature with the title of Manager.

iii. From the time of the LLC's formation, through and including all times relevant to this adversary proceeding, the LLC has never maintained a bank account and has never had any income.

iv. On or about May 18, 2004, Fixler assigned his purchase rights under the Contract to the Religious Corporation pursuant to a written assignment (the "Assignment"). The Assignment was executed on behalf of the Religious Corporation as assignee by Rabbi Steinwurzel.

v. On or about June 3, 2004, Helen-May and the Religious Corporation entered into a letter agreement (the "Occupancy Agreement") that set forth the terms of the Religious Corporation's occupancy of the Meadows Property pending an adjourned closing of the sale thereof under the Contract. Lefkowitz executed the Occupancy Agreement on behalf of the Religious Corporation.

          At the time, Lefkowitz was a member of the Congregation and frequently worshipped at the Congregation's Synagogue.

    vi.    On each of the New York State real property transfer tax forms executed in connection with the aforesaid conveyances of the Adjacent Parcels, the EIN of the transferee, the non-existent entity "Kollel Mateh Efraim LLC," was listed as 11-2831693. That EIN was and remains to date that of the Religious Corporation.

    vii.    On or about September 22, 2004, Helen-May and the Religious Corporation entered into another letter agreement (the "Extension Agreement") which, among other things, provided for a further extension of the closing date under the Contract, and authorized the Religious Corporation's continued occupancy of the Meadows Property pending the closing of the sale thereof. Lefkowitz executed the Extension Agreement on behalf of the Religious Corporation. At the time, Lefkowitz continued to be a member of the Congregation and frequently worshipped at the Synagogue.

    viii.    As the LLC never had any income, no monies of the LLC were used to fund the DIP Account.

7.    **DEFENDANT RELIGIOUS CORPORATION'S CONTENTIONS OF FACT**:

    i.    The Religious Corporation never held any annual or other meetings authorizing any action alleged by the Trustee to have been taken by either Lefkowitz or Rabbi Steinwurzel on behalf of the Religious Corporation. Nor did the members or Religious Corporation benefit from such actions.

    ii.    There are currently approximately 150-200 members of the Congregation.

    iii.    A separate bank account is maintained in the name of the Religious Corporation which is designated for payment of the expenses of the upkeep of the Synagogue. Checks on that account are written exclusively by a

    member of the Congregation, although both the member and Rabbi Steinwurzel are signatories on the account.

iv. In the summer of 2004, the Meadows Property was used as a hotel for paying guests as well as a camp run by Rabbi Steinwurzel.

**The Occupancy of the Property And the Camp.**

v. The Debtor commenced its occupancy of the Meadows Property sometime in June 2004, but the parties did not close the Contract by the new date. Instead, on or about September 22, 2004, they amended the Occupancy Agreement by executing a second letter agreement (the "Extension Agreement"). The Extension Agreement extended the closing date to November 29, 2004 and required the Debtor to pay the additional sum of $20,250 upon return of the Extension Agreement and another $20,250 on or before October 27, 2004. On or about September 29, 2004, the Debtor informed Helen-May that it had stopped payment on the check representing the first payment under the Extension Agreement due to a dispute regarding the actual acreage of the Meadows Property.

    After the bankruptcy petition was filed, the Debtor continued to occupy the Meadows Property. Bankruptcy Judge Blackshear issued a bench order directing the Debtor to pay Helen-May $5,000 per month for its use and occupancy of the Meadows Property. In or about May 2005, the Debtor ceased making the monthly payments. Helen-May subsequently filed a motion seeking, among other things, to lift the automatic stay to evict the Debtor, and in the event the Debtor continued to occupy the Meadows Property, to require the Debtor to pay monthly use and occupancy, which Helen-May estimated to be $12,000. The Court ruled that, effective July 1, 2005, the Debtor must make payments to Helen-May on account of its continued occupancy in the sum of $11,677 per month, plus real estate taxes

        equal to $1,876 per month, or a total amount of $13,553 per month (the "Adequate Protection Payments").

vi. On August 10, 2007, the Court entered an Order and Judgment (the "Judgment") in favor of Helen-May against the Debtor in the amount of $245,779, representing the unpaid Adequate Protection Payments through July 2007.

vii. After the Court converted the chapter 11 case to one under chapter 7 on October 25, 2007, Robert Geltzer, the chapter 7 trustee (the "Trustee"), commenced an adversary proceeding alleging that Rabbi Steinwurzel and Lefkowitz breached their fiduciary duties to the Debtor.

viii. Lefkowitz had allowed Rabbi Steinwurzel, whom he had known for thirty years, to operate a children's camp (the "Camp") at the Meadows Property during the summers of 2004 through 2007 without paying rent. Lefkowitz also caused the Debtor to let out rooms at the Meadows Property to families and individuals as a weekend retreat. In his complaint against Lefkowitz and Steinwurzel, the Trustee argued that by allowing the Camp to be on the Debtor's property for the years 2004-2007 without paying rent, Lefkowitz had damaged the Debtor. The damages requested by the Trustee of $245,779, plus interest reflect the increased debt that accrued by the Debtor continuing to occupy the real property under contract with Helen-May for approximately three years.

ix. In a decision dated April 28, 2011, the Bankruptcy Court rejected the Trustee's argument that Rabbi Steinwurzel was a member or manager of the Debtor. He also rejected the argument that Lefkowitz had breached his duties to the Debtor corporation and found that Lefkowitz' decision to continue the Debtor's occupancy of the Meadows Property was both fair and reasonable because (i) the Meadows Property was valuable, and the Debtor's contract rights to the Meadows Property were a significant asset; (ii) while in the

hands of Helen-May, the Meadows Property had deteriorated and further deterioration threatened to reduce its value; (iii) occupancy permitted Lefkowitz to spend substantial funds—his own—to upgrade the infrastructure of the Meadows Property, protecting the Debtor's asset and future development plans; (iv) although many of Lefkowitz' expenditures also benefitted the Camp, they maintained and enhanced the value of the Debtor's investment; and (v) Lefkowitz had reason to believe that the dispute with Helen-May would be resolved.

8. **ISSUES OF LAW**:

**Plaintiff:**

Based upon all of the evidence to be presented at trial, is the Religious Corporation the alter ego of the Debtor, and thus liable for all of the debts of the Debtor?

**Defendant:**

Even if Lefkowitz and Rabbi Steinwurtzel conspired to commit fraud in their dealings with Helen-May and/or the Bankruptcy Court, does the Court have the power to make the Religious Corporation liable for their contracts, when (i) neither Lefkowitz nor Steinwurzel had actual or apparent authority to bind the Religious Corporation, (ii) neither the Religious Corporation nor the membership benefited from their actions and (iii) there is no evidence that any of the creditors in this case believed they were dealing with the Religious Corporation.

9. **PREVIOUS SUBSTANTIVE MOTIONS**:

On or about November 26, 2007, the Religious Corporation made a motion seeking dismissal of the Plaintiff's Complaint (the "Dismissal Motion"), which Dismissal Motion was opposed by Plaintiff.  In an Order dated

> February 5, 2008, the Bankruptcy Court denied the Dismissal Motion. In a Memorandum Decision dated May 28, 2009, the Bankruptcy Court denied Plaintiff's motion to strike the Defendant's jury demand, and on June 16, 2009, in accordance with the foregoing, the Bankruptcy Court issued an Order denying that motion to strike.

10. **WITNESSES**:

**Plaintiff**:

i. <u>Rabbi Abraham Steinwurzel</u> – Through both Rabbi Steinwurzel's in-person trial testimony and deposition testimony, Plaintiff intends to establish how the Religious Corporation functioned as the alter ego of the Debtor through various acts of Rabbis Steinwurzel, including: his execution of the assignment of the sale contract for the Meadows Property in the name of the Religious Corporation; his setting up of, and control of, a bank account of the Religious Corporation at Astoria Federal Savings Bank ("Astoria Federal") that served as the Debtor's sole DIP Account; his arranging for the funding of the DIP Account with monies transferred thereto from accounts maintained by the Religious Corporation, of which accounts he was the sole authorized signatory; his execution of various checks on behalf of the Debtor drawn on the DIP Account as the sole authorized signatory for that account; and his execution of various Monthly Operating Statements of the Debtor during the Chapter 11 case in the capacity as the purported Manager of the Debtor.

ii. <u>Jack Lefkowitz</u> – Through both Lefkowitz's in-person trial testimony and deposition testimony, Plaintiff intends to establish that, among other things: there never was, nor has there ever been a legal entity by the name of "Kollel Mateh Efrain, LLC," one of the names of the Debtor; the entity Mateh Ephraim LLC, another one of the names by which the Debtor is known, has hever had any income, and has never had a bank account, including a Debtor-in-possession account, in its own name; the Debtor's DIP Account was set up by Rabbi Steinwurzel, who was the sole signatory for that account and funded that account with monies transferred from other accounts of the Religious Corporation of which Rabbi Steinwurzel was the sole signatory; and the Religious Corporation's Federal Employment Identification Number ("EIN") was used on certain documents, including real property transfer tax forms, relating to real estate assets claimed to be assets of the Debtor.

iii. <u>Peter Miani of Astoria Federal</u> – Through in-person trial testimony, Mr. Miani will testify to various facts pertaining to the setting up and use of the DIP Account.

14

147410.4/103032.00002

    iv.    <u>Sherry Neider of Astoria Federal</u> - Through in-person trial testimony, Ms. Neider will testify to various facts pertaining to the setting up and use of the DIP Account.

**<u>Defendant's in-person witnesses and a summary of their testimony:</u>**

i.    <u>Eli Brezel</u> will testify *inter alia* as to how the Religious Corporation was run, who had the authority to run it and the fact that Rabbi Steinwurzel was not authorized by the Religious Corporation to purchase property or run a camp and that neither the Religious Corporation nor the membership benefited from their actions.

ii.    <u>Mark Frankel</u> will testify *inter alia* as to how the Religious Corporation was run and who had the authority to run it and the fact that Rabbi Steinwurzel was not authorized by the Religious Corporation to purchase property or run a camp and that neither the Religious Corporation nor the membership benefited from their actions.

iii.    <u>Isaac Friedman</u> will testify *inter alia* as to how the Religious Corporation was run and who had the authority to run it and the fact that Rabbi Steinwurzel was not authorized by the Religious Corporation to purchase property or run a camp and that neither the Religious Corporation nor the membership benefited from their actions.

iv.    <u>Irene Griffin</u> will testify as to her interactions with the Plaintiff and Defendant on behalf of Helen-May.

v.    <u>Paul Griffin</u> will testify as to his interactions with the Plaintiff and Defendant on behalf of Helen-May.

vi.    <u>Michael Halberstam</u> will testify *inter alia* as to how the Religious Corporation was run and who had the authority to run it and the fact that Rabbi Steinwurzel was not authorized by the Religious Corporation to purchase property or run a camp and that neither the Religious Corporation nor the membership benefited from their actions.

vii.    <u>Benjamin Kleinbart</u> will testify *inter alia* as to how the Religious Corporation was run and who had the authority to run it and the fact that Rabbi Steinwurzel was not authorized by the Religious Corporation to purchase property or run a camp and that neither the Religious Corporation nor the membership benefited from their actions.

vii.   Scott Krinsky will testify *inter alia* as to how certain erroneous information was provided to the Bankruptcy Court.

viii.   Jack Lefkowitz will testify *inter alia* as to whether he intended his acts to bind the Religious Corporation and how certain erroneous information was provided to the Bankruptcy Court.

ix.   Daniel J. Scher will testify as to representations made to him regarding the nature of the purchasing entity in the contract of sale of the Property from Helen-May.

x.   Rabbi Steinwurtzel will testify *inter alia* as to how the Religious Corporation was run and who had the authority to run it and whether he intended his acts to bind the Religious Corporation.

xi.   Mark Terkeltaub will testify *inter alia* as to how he dealt with creditors and customers when he helped run the guest program at the Property on behalf of the LLC.

11. **EXPERTS**:

   None.

12. **EXHIBITS**:

   i.   The parties stipulate to the admissibility of the following exhibits. The parties also stipulate that copies of the following exhibits shall be considered as originals for purposes of being admitted into evidence:

   **       Certificate of Incorporation of the Religious Corporation Kolel Mateh Efraim

   **       Articles of Organization of Mateh Ephraim LLC

   **       April 29, 2004 Contract of Sale between Helen-May Holdings, LLC as Seller and Aron Fixler as Purchaser re the Meadows Property

   **       May 18, 2004 Assignment of the Contract of Sale between Aron Fixler as Assignor and "Kolel Mateh Efraim" as Assignee re the Meadows Property

\*\*	June 3, 2004 Letter Agreement between Helen-May Holdings, LLC and "Kolel Mateh Efraim" re the Meadows Property

\*\*	September 22, 2004 Letter Agreement between Helen-Mays Holdings, LLC and "Kolel Mateh Efraim" re the Meadows Property

\*\*	June 23, 2004 Deed between Nazmi Havolli and Shpresa Havolli as Seller and "Kollel Mateh Efraim, LLC" as Purchaser conveying Lot 45 of the Adjacent Parcels (the "Lot 45 Deed")

\*\*	June 23, 2004 Deed between Naim Saiti and Fahrije Saiti as Seller and "Kollel Mateh Efraim LLC" as Purchaser conveying Lot 47 of the Adjacent Parcels (the "Lot 47 Deed")

\*\*	New York State Real Property Transfer Tax Form re the Lot 45 Deed (it is stipulated that this document was received from Michael Halberstam, Esq., the attorney who represented the Purchaser ("Halberstam"))

\*\*	New York State Real Property Transfer Tax Form re the Lot 47 Deed (it is stipulated that this document was received from Halberstam)

\*\*	Chapter 11 Petition filed in the instant bankruptcy case on October 4, 2004 with the caption "Kollel Mateh Efraim, LLC, Debtor." (the "October 4 Petition")

\*\*	Chapter 11 Petition filed in Case No. 04-17525 (i.e., the Second Bankruptcy Case) in this Court on November 24, 2004 with the caption "Mateh Ephraim LLC, Debtor."

\*\*	November 27, 2006 Order of this Court dismissing the Second Bankruptcy Case and ordering that the caption of the instant bankruptcy case be amended to read "Kollel Mateh Efraim, LLC, a/k/a Mateh Ephraim LLC, a/k/a Kolel Mateh Efraim, Debtor."

\*	Affidavit of Rabbi Steinwurzel sworn to May 21, 2007 filed in this bankruptcy case

\*	Corporate Resolution dated April 5, 2006 re DIP Account

\*	Application Form for DIP Account

\*	April 25, 2007 Order of this Court ordering adequate protection payments to be made by Debtor to Helen-May

\*	Checks Drawn on DIP Account

\*	Monthly Bank Statements from Astoria Federal for DIP Account

17

\*       Deposit and Transfer Slips re deposits made into DIP Account

\*       Checks deposited into DIP Account

\*\*      Corporate Resolutions and Signature Authorization Cards for Religious Corporation bank accounts maintained at Astoria Federal

\*       Debtor's Monthly Operating Statements

\*       Communication from Internal Revenue Service re EIN of Mateh Ephraim LLC

\*       Time entries of Backenroth, Frankel & Krinsky LLP re services performed for Debtor

\*       Transcript of the January 30, 2008 Bankruptcy Rule 2004 Examination of Jack Lefkowitz in this bankruptcy case

\*       Transcript of the March 28, 2008 Bankruptcy Rule 2004 Examination of Rabbi Steinwurzel in this bankruptcy case

\*       Transcript of the deposition of Jack Lefkowitz in this adversary proceeding

\*       Transcript of the deposition of Rabbi Steinwurzel in this adversary proceeding

\*       Transcript of the deposition of Peter Miani in this adversary proceeding

\*\*      Maskil El-Dal checks

\*\*      Deed Conveying Synagogue Property to Kolel Mateh Efraim

\*       Limited Summary Appraisal Report  prepared by Roeder's Appraisal Services

\*\*      Creditor invoices and two letters from Mendel Friedman of Toronto

ii.   Plaintiff's Proposed Additional Exhibits:

iii.  Defendant's Proposed Additional Exhibits:

1. Lease dated June 28, 2005 between IDI Carlino Inc and Rabbi Steinwurzel

2. Opinion of Judge Bernstein dated 4/28/11 in case no 08-1265

18

147410.4/103032.00002

3. Pre-Trial Order submitted in case no 08-1265

4. Statement of Financial Affairs in case no 04-16410

5. Schedules in case no 04-16410

13. **REQUESTED EVIDENTIARY RULINGS**:

   i. None at this time.

14. **TRIAL COUNSEL**:

   For Plaintiff:    Robert A. Wolf, Esq.
                     Squire Sanders (US) LLP
                     30 Rockefeller Plaza
                     New York, NY 10112
                     Phone: (212) 872-9800
                     Fax:   (212) 872-9815

   For Defendant:    Issac Nutovic, Esq.
                     Nutovic and Associates
                     488 Madison Avenue, 16th Floor
                     New York, N.Y. 10022
                     Phone: (212) 421-9100
                     Fax:   (212) 421-8618

15. **ESTIMATE OF TRIAL TIME**:

   Plaintiff's counsel estimates that the trial will consume approximately 4 days. The Religious Corporation's counsel estimates that the trial will consume approximately 8-10 days. As set forth above, the adversary proceeding is to be tried before a jury. All parties have not consented to a trial by a magistrate judge.

APPROVED AS TO FORM AND SUBSTANCE:

SQUIRE SANDERS (US) LLP


By: /s/  Robert A. Wolf
      Attorneys for Plaintiff


NUTOVIC & ASSOCIATES


By: /s/  Isaac Nutovic
      Attorneys for Defendant
      Religious Corporation

Dated:  New York, New York
          February 3, 2012