SQUIRE SANDERS (US) LLP
(formerly known as Squire Sanders &
  Dempsey (US) LLP
30 Rockefeller Plaza, 23rd Floor
New York, New York 10112
(212) 872-9800
Robert A. Wolf, Esq.
(robert.wolf@squiresanders.com)

*Substitute General Counsel to the Plaintiff-
Chapter 7 Trustee*


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x

| | |
|---|---|
| In re | : |
| | : |
| **KOLLEL MATEH EFRAIM, LLC a/k/a MATEH** | : |
| **EPHRAIM, LLC, a/k/a KOLEL MATEH EFRAIM,** | : |
| | : |
| Debtor. | : |
| – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x | **10 Civ. 7123 (PAE)** |
| **ROBERT L. GELTZER, as Chapter 7** | : |
| **Trustee of the Estate of Debtor KOLLEL MATEH** | : |
| **EFRAIM, LLC, a/k/a MATEH EPHRAIM LLC, a/k/a** | : |
| **KOLEL MATEH EFRAIM,** | : |
| | : **(Chapter 7 Case No. 04-16410** |
| Plaintiff, | : **[SMB] Bankruptcy Ct. SDNY)** |
| | : |
| v. | : **(Adv. Proc. No. 07-02052** |
| | : **[SMB] Bankruptcy Ct. SDNY)** |
| **KOLLEL MATEH EFRAIM, LLC a/k/a MATEH** | : |
| **EPHRAIM, LLC, a/k/a KOLEL MATEH EFRAIM and** | : |
| **KOLEL MATEH EFRAIM,** | : |
| | : |
| Defendants. | : |
| | : |
| – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – x | |


**AFFIRMATION OF ROBERT A. WOLF, ESQ. IN SUPPORT OF TRUSTEE'S**
**MOTION FOR AN ORDER APPROVING A STIPULATION OF SETTLEMENT**
**BETWEEN PLAINTIFF ROBERT L. GELTZER, AS CHAPTER 7 TRUSTEE**
**AND DEFENDANT KOLEL MATEH EFRAIM PURSUANT TO RULE 9019 OF**
**THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Robert A. Wolf, an attorney at law, duly admitted to practice before the United States District Court for the Southern District of New York, affirms under the penalty of perjury as follows:

1.      I am a member of the firm of Squire Sanders (US) LLP  (formerly known as Squire Sanders & Dempsey (US) LLP, Substitute Counsel to Robert L. Geltzer, as Chapter 7 Trustee ("Trustee") of the above-captioned debtor (the "Debtor"), and as Trustee, the plaintiff in the above-captioned adversary proceeding (the "Adversary Proceeding").  As the primary attorney at my firm who has represented the Trustee in this matter, I am familiar with the relevant facts and circumstances set forth herein, and submit this affirmation ("Affirmation"), in support of the Trustee's motion (the "Motion") for an order, pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the Stipulation of Settlement ("Stipulation") entered into between the Trustee as plaintiff, and Kolel Mateh Efraim as defendant ("Defendant"), pursuant to which the Defendant is paying the Trustee the amount of $65,000.00 in resolution of the Adversary Proceeding.  A copy of the Stipulation is attached as Exhibit A.

## Jurisdiction

2.      The United States District Court for the Southern District of New York has jurisdiction over this Adversary Proceeding under 28 U.S.C. § 1334.

## Background

3.      On October 4, 2004, the Debtor filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code").

4.      On September 25, 2007, the instant Adversary Proceeding was commenced by a creditor of the Debtor, Helen-May Holdings, LLC ("Helen-May"), and by

Helen-May's principal, Irene Griffin ("Griffin"), against the Debtor and the Defendant.  In their

Complaint in the Adversary Proceeding, Helen-May and Griffin asserted two causes of action:

(a) one seeking a declaratory judgment that the Defendant Kolel Mateh Efraim was the actual

Debtor in the bankruptcy case; and (b) an alternative one seeking a declaratory judgment that the

Defendant Kolel Mateh Efraim was the alter ego of the Debtor, and thus liable for all debts of the

Debtor (Adv. Proc. Docket No. 1[1]).

        5.      Helen-May's and Griffin's aforesaid claims in the Adversary Proceeding

were based upon its allegations, among others, relating to:  (a) the Defendant's execution of

certain documents relating to real estate interests claimed to be assets of the Debtor; (b) the

listing of the Defendant's Federal Employment Identification Number  on certain documents

relating to real estate assets claimed to be assets of the Debtor; (c) the Debtor's establishment

during the Chapter 11 phase of this bankruptcy case of a debtor-in-possession account bearing

the title "Kolel Mateh Efraim – DIP (the "DIP Account"), with the sole authorized signatory of

that account being Rabbi Abraham Steinwurzel ("Rabbi Steinwurzel"), the trustee of the

Defendant and its head rabbi, and at the same time the purported Manager of the Debtor; (d) the

funding of that DIP Account with monies transferred thereto from accounts maintained by the

Defendant, of which accounts Rabbi  Steinwurzel was an authorized signatory, and from fees for

a summer camp and for a yeshiva operated and directed by Rabbi Steinwurzel;  (e) the fact that

at no time relevant to this adversary proceeding has there been extant a legal entity by the name

---

[1]      A reference denoted "Adv. Proc. Docket No. _" is to the docket number of the pertinent
filing in the Adversary Proceeding that appears on the electronic filing docket system of
the United States Bankruptcy Court for the Southern District of New York.

of "Kollel Mateh Efraim, LLC," one of the names of the Debtor; and (f) the fact that the entity

Mateh Ephraim LLC, another one of the names by which the Debtor is known, has never had any

income, and has never had a bank account in its own name.

6.      By an Order of the Bankruptcy Court dated October 25, 2007, and entered

on the docket on October 29, 2007, this bankruptcy case was converted from one under Chapter

11 to one under Chapter 7 of the Bankruptcy Code (Bankr. Docket No. 221[2]).

7.      Shortly after the date of that Order, on or about October 29, 2007, the

Trustee was appointed interim trustee of the Debtor (Bankr. Docket No. 222), and subsequently

became permanent Trustee pursuant to 11 U.S.C. § 702(d) and by operation of law, and has

continued serving as such Trustee through and including the present date.

8.      Pursuant to a Stipulation so ordered by the Bankruptcy Court on

December 6, 2007, the Trustee was substituted for Helen-May and Griffin as plaintiff in this

Adversary Proceeding, and the caption of the Adversary Proceeding was amended to reflect that

substitution (Adv. Proc. Docket No. 7).

9.      After its motion to dismiss the Complaint in the Adversary Proceeding

was denied by an Order of this Court dated February 5, 2008 (Adv. Proc. Docket No. 12), the

Defendant served its Answer to the Complaint (Adv. Proc. Docket No. 13).  In its Answer, the

Defendant denied the critical allegations asserted in the Complaint, alleged that the individuals

involved never intended to have the Defendant's name on the aforementioned real estate

---

[2]      A reference denoted "Bankr. Docket No. _" is to the docket number of the pertinent filing
in the Debtor's bankruptcy case that appears on the electronic filing docket system of the
United States Bankruptcy Court for the Southern District of New York.

documents relating to real estate assets of the Debtor, and further alleged that, to the extent the

Defendant's name appeared on any of such documents, that was the result of inadvertent

mistakes made by several of the participants to the relevant transactions, including lawyers. The

Defendant also contented in its Answer that, as a matter of law, neither Rabbi Steinwurzel nor

another individual involved, one Jack Lefkowitz, had any authority or power to bind the

Defendant, a New York religious corporation, with respect to any of the purported actions of the

Defendant identified in the Complaint.

        10.     Pre-trial discovery then proceeded in the Adversary Proceeding, including

the conducting of a number of depositions, and the exchange of documents.  Once discovery was

completed, the parties submitted a Joint Pre-Trial Order to the Bankruptcy Court which was

signed by Bankruptcy Judge Bernstein on November 13, 2008 (Adv. Proc. Docket No. 20).

Pursuant to a Stipulation between the parties that was so ordered by Judge Bernstein on April 22,

2009, the Joint Pre-Trial Order was amended (a) to permit the Defendant to add an additional

individual as a trial witness, and (b) to confirm the Trustee's agreement to drop the First Claim

for Relief in the Complaint, namely, the claim seeking a declaratory judgment that the Defendant

was the actual debtor in the bankruptcy case (Adv. Proc. Docket No. 46).  Thus, the remaining

claim for relief in the Adversary Proceeding was that by which the Trustee sought a declaratory

judgment that the Defendant was the alter ego of the Debtor and thus liable for all debts of the

Debtor.

        11.     In December 2008, the Trustee had made a motion to strike the

Defendant's jury demand.  After that motion had been briefed by both sides, Judge Bernstein

signed an Order on June 16, 2009 denying the Trustee's motion to strike the jury demand (Adv.

Proc. Docket No. 48).  As a result of that Order, coupled with the fact that the Defendant did not

consent to have the jury trial of this Adversary Proceeding conducted by a bankruptcy judge

pursuant to 28 U.S.C. § 157(e), the reference of the Adversary Proceeding to the Bankruptcy

Court was withdrawn pursuant to 28 U.S.C. § 157(d), as well as pursuant to a Stipulation

between the Trustee and the Defendant that was so ordered by Judge Robert W. Sweet of this

Court on September 21, 2010.

12.     The jury trial of this Adversary Proceeding was scheduled to commence

on May 7, 2012, and it was anticipated that the trial would consume approximately eight (8) days

over a two-week period.

13.     Although there previously had been sporadic settlement discussions

between the two sides, such discussions resumed in earnest after the final pre-trial conference

held before this Court on April 24, 2012.

14.     Those discussions ultimately resulted in the parties' successful negotiation

of the terms of the Stipulation attached hereto as Exhibit A, pursuant to which the Defendant is

paying the Trustee the total amount of $65,000.00, in full resolution of the Adversary

Proceeding.

## The Stipulation

15.     The Trustee has determined that it would be in the best interests of the

Debtor's estate for the Trustee to enter into the subject settlement with the Defendant.

Specifically, and for the reasons to be discussed infra, the Trustee believes it is in the estate's

best interests to avoid the further substantial expense and risk of a trial of this Adversary

Proceeding and to settle the Trustee's claim against the Defendant therein, and any and all other

claims or obligations that were or could be asserted between the Trustee, on the one hand, and

the Defendant, on the other, up to and including the date of the Stipulation.

150215.2/103032.00002

16.     Accordingly, the Trustee and the Defendant have executed the Stipulation, dated as of May 1, 2012, the significant terms of which are as follows:

(a)     Simultaneously with the execution of the Stipulation, the Defendant has paid to the Trustee a total of $65,000.00.

(b)     The Trustee and the Defendant agree to reciprocal mutual releases of any and all claims between them, such releases to become effective upon an order of this Court approving the Stipulation becoming a Final Order (as defined in the Stipulation).

(c)     Within five (5) days following the date upon an order of this Court becomes a Final Order, the parties, through their respective counsel, shall file a stipulation of dismissal of the Adversary Proceeding, with prejudice.

17.     The Trustee and the Defendant, by their respective counsel, have negotiated the terms of the Stipulation in good faith and at arms length and have agreed that the Stipulation shall have no force or effect unless and until it is approved by this Court.

**<u>The Stipulation Should be Approved</u>**

18.     The Trustee believes that the proposed settlement embodied in the Stipulation meets the requirements for a compromise of controversy under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  Bankruptcy Rule 9019(a) provides in relevant part:  "upon a motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."

19.     In deciding whether to approve a proposed settlement, a court must determine whether the proposal is "fair and equitable" and "in the best interests of the estate."  <u>In re Drexel Burnham Lambert Group, Inc</u>., 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991); <u>In re Texaco</u>, 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988); <u>In re Carla Leather, Inc.</u>, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984), <u>aff'd</u>, 50 B.R. 764 (S.D.N.Y. 1985) (court should approve proposed settlement where it is in the bounds of reasonableness).

7

20.    A court need not conduct an independent investigation in formulating its opinion as to the reasonableness of a settlement.  In re International Distribution Centers, Inc., 103 B.R. 420, 422-23 (S.D.N.Y. 1989) (affirming bankruptcy's court's confirmation of proposed settlement on ground that settlement met or exceeded lowest standard of reasonableness); In re Best Products Co., Inc., 168 B.R. 35, 50-51 (Bankr. S.D.N.Y. 1994), appeal dismissed, 177 B.R. 791 (S.D.N.Y. 1995), aff'd, 69 F.3d 26 (2d Cir. 1995).  Indeed, the court need only determine whether the settlement "'fall[s] below the lowest point in the range of reasonableness.'"  In re W.T. Grant Co., 699 F.2d 599, 613 (2d Cir. 1983) (citations omitted) (proposed settlement agreement between debenture holders and bankrupt estate ensuring debenture holders a nineteen percent refund of their investment was approved where the settlement could hardly be regarded as below the lowest point in the range of reasonableness); Drexel, 134 B.R. at 497.

21.    The court in Drexel approved a settlement between the debtor and a corporate insider, a former corporate officer, and explained:

> Courts look to several factors which shed light on whether the compromise remains above the lowest point in the range of reasonableness.  In determining whether a settlement is "fair and equitable," i.e., within the range of reasonableness, courts should balance:
>
> a)    the likelihood of success compared to the present and future benefits offered by the settlement;
> b)    the prospect of complex and protracted litigation if settlement is not approved;
> c)    the proportion of the . . . [creditors] . . . who do not object or who affirmatively support the proposed settlement;
> d)    the competency and experience of counsel who support settlement;
> e)    the relative benefits to be received by . . . [the creditors] . . . ;
> f)    the nature and breadth of releases to be obtained by officers and directors; and
> g)    the extent to which the settlement is the product of arms' length bargaining.

150215.2/103032.00002

Drexel, 134 B.R. at 497 (cited in Best Products, 168 B.R. at 50).  In Drexel, the court approved

the proposed settlement, having found that it was above the lowest point in the range of

reasonableness and that it was fair and equitable and in the best interests of the estate.

22.     On behalf of the Trustee, it is respectfully submitted that the proposed

settlement embodied in the Stipulation more than sufficiently meets these standards.

23.     In exercising his reasonable business judgment to enter into this

settlement, the Trustee took cognizance of the fact that the Debtor's estate is administratively

insolvent to a very substantial degree.  Prior to this settlement, the only recovery made by the

Trustee in this protracted bankruptcy case had come from his sale of two (2) contiguous parcels

of real estate owned by the Debtor located in the Catskills region of New York State.  That sale,

consummated in January, 2009, in the wake of the severe economic recession which had caused

real estate values in that region, as elsewhere, to plummet,  resulted in net proceeds for the estate

of approximately only $133,000.00 (the "Net Sale Proceeds"), significantly less than the amount

the Debtor had paid for those two parcels prior to its bankruptcy filing.

24.     In contrast to that small recovery, the Chapter 7 expenses of the estate

have been substantial.  In addition to this Adversary Proceeding, the Trustee had commenced an

additional adversary proceeding against the Debtor's insiders for breaches of fiduciary duty, and

in both proceedings, the defendants were very litigious, and there was considerable discovery

and motion practice in both.  Moreover, the other adversary proceeding did go to trial,

subsequent to which, unfortunately for the estate, Judge Bernstein dismissed the Trustee's

claims.  Furthermore, there was extensive motion practice and an evidentiary hearing between

the creditor Helen-May and other creditors of the estate challenging the extent and amount of

Helen-May's claims,  respecting which, by virtue of the connection between that litigation and

the claims adjudication process, as well as certain of the issues in the other adversary proceeding, the participation of the Trustee's counsel was necessary.

25.     Aware of the administrative insolvency of the estate, Helen-May, which alleged it had a secured claim with respect to the Net Sale Proceeds, previously entered into a Stipulation with the Trustee, so ordered on March 13, 2009, pursuant to which: (a) the Trustee agreed to pay $30,000 from the Net Sale Proceeds to Helen-May; and (b) Helen-May agreed to subordinate its allegedly secured claim to payment of allowed Chapter 7 administrative claims with respect to the remaining approximate $103,000 of Net Sale Proceeds, plus the next $60,000 of additional monies, if any, recovered by the Trustee on behalf of the estate.[3]

26.     Alongside the Trustee's consideration of the estate's administrative insolvency was his consideration of the substantial risk for the estate if the instant Adversary Proceeding were to go to trial.  The Trustee was very concerned about the risk that the key defense asserted by Defendant -- namely, that whatever malfeasance Rabbi Steinwurzel and Jack Lefkowitz may have engaged in with respect to the Debtor's conduct and operations during the Chapter 11 phase of the bankruptcy case was outside of the scope of any authority granted to them by the law governing a religious corporation like Defendant or by the Defendant's by-laws – would be successful and result in a dismissal of the Trustee's claim.  Indeed, a number of the witnesses whom Defendant intended to call at trial – each an officer and/or member of Defendant's synagogue – had testified at their respective depositions that they knew nothing of

---

[3]     That so ordered stipulation appears as Docket No. 75 in the adversary proceeding in the Debtor's bankruptcy case captioned <u>Geltzer, as Chapter 7 Trustee v. Helen-May Holdings, LLC, et al.</u>, Adv. Proc. No. 04-04545(SMB).

Rabbi Steinwurzel's and Lefkowitz's actions and that they were unaware of any authority having been granted to them to undertake such actions.  In addition, the Trustee was concerned that a jury would likely be very sympathetic to the deleterious financial and other consequences Defendant, a religious corporation, would face were they to find in favor of the Trustee on his alter ego claim.[4]

      27.    Given what the Trustee reasonably perceived to be a very real risk that he could suffer an adverse jury verdict after a two-week trial that would cause the estate to incur yet additional substantial legal fees without any ultimate monetary recovery, the Trustee determined that it was reasonable to enter into the subject settlement, avoid yet further legal fees, and have some money available to pay a small portion of the substantial Chapter 7 administrative expenses in the case and have some additional money to pay Helen-May under the terms of the aforementioned stipulation.

      28.    Accordingly, it is respectfully submitted that the proposed settlement is fair and equitable and well within the range of reasonableness.  This settlement is in the best interests of the estate given the estate's administratively insolvent condition and the substantial risk that going forward with a jury trial of the Adversary Proceeding would produce a result considerably less favorable than that achievable pursuant to the Stipulation.  Thus, it is

---

[4]    The Trustee was also concerned that even if he were successful at trial, he would have to incur yet more substantial legal fees in endeavoring to execute upon any judgment obtained against the Defendant.  The only known asset of the Defendant is its ownership of the real estate which houses its synagogue, and thus the Trustee considered it likely that the Defendant would seek various avenues to avoid losing that valuable asset, including filing bankruptcy.

respectfully submitted that the Stipulation meets the requirements for approval under Bankruptcy

Rule 9019, and that the Stipulation should be approved by this Court.

<b>Waiver of Requirement that the Trustee<br><u>Submit a Memorandum of Law</u></b>

29.     By letter dated May 8, 2012, the Trustee, by his undersigned counsel,

requested that this Court waive and dispense with the requirements set forth in Rule 7.1(a) of the

Local Rules of the United States District Courts for the Southern and Eastern Districts of New

York, which require that any motion filed shall have an accompanying memorandum of law,

because the Motion does not present any novel issues of law, and, included in this Affirmation is

the law upon which the Trustee relies.  That request was granted by this Court pursuant to its

May 9, 2012 endorsement upon a copy of the aforesaid May 8, 2012 letter.

<b><u>Notice</u></b>

30.     This Affirmation, the Stipulation, attached hereto as Exhibit A, and the

proposed Order approving the Stipulation, attached hereto as Exhibit B, are being served on the

parties listed on the Service List, attached hereto as Exhibit C, including the United States

Trustee's office, the creditors of the Debtor's estate and any other parties who have filed a notice

of appearance in the bankruptcy case as required by Bankruptcy Rule 2002(a)(3).

12

31.     WHEREFORE, on behalf of  the Trustee, it is respectfully requested that this Court (i) approve the Stipulation of Settlement, attached hereto as Exhibit A; (ii) enter an order approving the Stipulation of Settlement, in the form attached hereto as Exhibit B; and (iii) grant such other and further relief as is just and proper.

Dated:  New York, New York
        May 15, 2012


                                    /s/ Robert A. Wolf___
                                    Robert A. Wolf, Esq.
                                    (robert.wolf@squiresanders.com)

13

150215.2/103032.00002